EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

J. MICHAEL SEABRIGHT #3753
Assistant U.S. Attorney

LESLIE E. OSBORNE, JR. #3740
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Les.Osborne@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00517 SOM |
| Plaintiff, | )<br>)<br>) | SUPERSEDING INDICTMENT |
| vs. | )<br>) | [18 U.S.C. §§ 371, 545, and 2;<br>16 U.S.C. §§ 3372(a)(1) |
| D.M. "DUSTY" GRUVER, (01)<br>aka DUSTIN AYER MULDOON, and<br>JACKSON MULDOON, (02) | )<br>)<br>) | and 3373(d)(1)(B)] |
| Defendants. | ) | |

SUPERSEDING INDICTMENT

COUNT 1

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment:

1.   The United States, Australia, the Philippines, Malaysia, China, Thailand, and Nepal, among numerous other

countries, are signatories to an International treaty known as the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES).

Under CITES, species are protected according to a classification system known as "appendices." Wildlife species listed on Appendix I of CITES are those threatened with extinction, trade in which must be subject to particularly strict regulation and authorized only in exceptional circumstances. Wildlife species listed on Appendix II of CITES are those not necessarily now threatened with extinction, but which may become so, unless trade in them is strictly regulated in order to avoid utilization incompatible with their survival. CITES, Article II(1 and 2). As used in CITES, the term "trade" includes "import, export, and re-export" and includes importation into and exportation from the United States. CITES, Article I(c).

The United States Department of the Interior, Fish and Wildlife Service (USFWS), is designated by Congress pursuant to the Endangered Species Act to administer CITES on behalf of the United States. The USFWS publishes regulations to implement CITES. All species protected by CITES are listed in USFWS regulations. Title 16, United States Code, Section 1537(a) and Title 50, Code of Federal Regulations, Section 23.23.

The nations which are members of CITES have agreed to monitor and regulate trade in Appendix I and II species by

prohibiting their international trade unless certain permits are first obtained and presented. CITES, Articles III and IV. In the United States, regulations implementing CITES are found in Title 50, Code of Federal Regulations, Part 23. For species listed on Appendix I, the regulations require that a valid "foreign export permit" issued by the specimen's country of origin, or a valid "foreign re-export certificate" issued by the country of re-export, as well as a valid "import permit" from the USFWS, be obtained prior to importing any such wildlife into the United States. Title 50, Code of Federal Regulations, Section 23.12(a)(1)(i). For species listed on Appendix II, the regulations require only that a valid "foreign export permit" issued by the specimen's country of origin, or a valid "foreign re-export certificate" issued by the country of re-export, be obtained prior to importing any such wildlife into the United States. Title 50, Code of Federal Regulations, Section 23.12(a)(2)(i).

    2. The provisions of CITES are implemented by the Endangered Species Act (ESA), by making it unlawful ". . . to trade in any specimen contrary to the provisions of [CITES], or to possess any specimen traded contrary to the provisions of [CITES]. . . ." Title 16, United States Code, Section 1538(c)(1). The term "trade," as used in CITES, includes importation into the United States. Article I(c). The ESA makes

it unlawful for any person to: import any endangered species of wildlife into, or export such species of wildlife from the United States; deliver, receive, carry, transport, or ship in interstate or foreign commerce and in the course of a commercial activity any endangered species of wildlife; and sell or offer for sale in interstate or foreign commerce any endangered species of wildlife.  Title 16, United States Code, Section 1538(a)(1)(A), (E), and (F).  A list of endangered species is published at Title 50, Code of Federal Regulations, Section 17.11.  Thus, some species are listed both within CITES Appendix I and on the U.S. list of endangered species.

    3.  The Orangutan (*Pongo pygmaeous*), Helmeted Hornbill (hornbill)(*Buceros vigil*), Clouded leopard (*Neofelis nebulosa*), Leopard (*Panthera pardus*), Leopard Cat (*Prionailurus bengelensis bengelensis*), and Tiger (*Panthera tigris*) are all listed as endangered species of wildlife by the ESA, Title 50, Code of Federal Regulations, Section 17.11 and as a protected species on Appendix I of CITES, Title 50, Code of Federal Regulations, Section 23.23.  "Endangered" species of wildlife includes "any part, product, egg, or offspring thereof, or the dead body or parts thereof."  Title 16, United States Code, Section 1532(8). Species listed on Appendix I or II of CITES include "any recognizable part or derivative thereof."  CITES, Article I(b)(ii).

4. The Sun bear (*Helarctos malayanus*), Asiatic black bear (*Ursus thibetanus*), and Elephant (*Order Proboscidea*) are listed as a protected species in Appendix I of CITES. Non-human primates and Hornbills (*Aceros* spp.) are only listed as a protected species on Appendix II. Title 50, Code of Federal Regulations, Section 23.23.

5. The Lacey Act Amendments of 1981 (Lacey Act) makes it unlawful to import, export, transport, sell, receive, acquire, or purchase any wildlife taken, possessed, transported or sold in violation of federal law, treaty, or regulation; or to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any wildlife taken, possessed, transported, or sold in violation of State or foreign law. Title 16, United States Code, Sections 3372 and 3373(d). The Lacey Act defines "wildlife" to mean "any wild animal, whether alive or dead, . . . and includes any part, product, egg, or offspring, thereof." Title 16, United States Code, Section 3371(a).

The smuggling statute, Title 18, United States Code, Section 545, makes it unlawful to knowingly import or bring into the United States any merchandise, including wildlife contrary to law, or to receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

Laws and regulations of the United States also require that, upon the importation of any wildlife, importers or their agents file with the USFWS a completed Declaration for Importation or Exportation of Fish and Wildlife. Title 16, United States Code, Section 1538(e); Title 50, Code of Federal Regulations, Section 14.61. Federal law also requires that a USFWS or United States Customs Service officer clear all wildlife imported into the United States, and that the importer or his agent make available to the officer the wildlife being imported, as well as all required permits, licenses or other documents. Title 50, Code of Federal Regulations, Section 14.52.

6. Defendants D.M. "DUSTY" GRUVER and JACKSON MULDOON are brothers. GRUVER resides in Hawaii and is involved in the sale of Tribal Artifacts as a full-time business. MULDOON resides in Oregon and operates a nursery business and, at times relevant to this Superseding Indictment, assisted his brother in the smuggling of wildlife, including parts and products of species listed as "endangered" under the Endangered Species Act and on Appendix I to CITES.

7. Defendant D.M. "DUSTY" GRUVER advertised these smuggled body parts and animal products for sale to the public over the internet after obtaining them himself or from a person identified in this Superseding Indictment as "J.T.," who was in Malaysia.

8. During relevant times of this conspiracy, the products and parts described in paragraph 7 were sent at Defendant D.M. "DUSTY" GRUVER's request from outside the United States to Defendant JACKSON MULDOON in Oregon, who would distribute them as GRUVER requested.

9. At no time did any of the named Defendants, D.M. "DUSTY" GRUVER or JACKSON MULDOON, or GRUVER's company Tribal Artifacts, present to the USFWS any valid CITES import permits, any valid CITES foreign exports permits, or any valid CITES foreign re-export certificates to import any of the species of wildlife listed in paragraphs 3 and 4 into the United States.

At no time did any of the named Defendants D.M. "DUSTY" GRUVER or JACKSON MULDOON, or GRUVER's company Tribal Artifacts, file any completed Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177) with the U.S. Fish and Wildlife Service to obtain clearance for the importation of any of the species of wildlife listed in paragraphs 3 and 4 into the United States.

10. The Grand Jury incorporates and re-alleges by reference the preceding introductory allegations set forth in paragraphs 1 through 9 in each and every Count of this Superseding Indictment.

## The Conspiracy

11. From on or about October 1, 1998, and continuing

to on or about July 14, 2003, within the District of Hawaii and elsewhere, the Defendants D.M. "DUSTY" GRUVER and JACKSON MULDOON did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree together and with others known and unknown to the Grand Jury, to commit acts in violation of the laws of the United States, namely -

<u>Objective Number One</u>: To knowingly import and bring into the United States merchandise, that is, wildlife, including an Orangutan (*Pongo pygmaeous*), Helmeted Hornbill (hornbill)(*Buceros vigil*), Clouded leopard (*Neofelis nebulosa*), and Leopard (*Panthera pardus*) contrary to law, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, that is, contrary to the ESA, Title 16, United States Code, Sections 1538(a)(1)(A), and CITES, 1538(c)(1), and Title 50, Code of Federal Regulations, Sections 14.52 and 14.61; in violation of Title 18 United States Code, Section 545.

<u>Objective Number Two</u>: To knowingly engage in conduct involving the sale and purchase of, and the offer of sale and purchase of, wildlife, that is, Helmeted hornbill ear weights, with a market value in excess of $350, by transporting, selling, receiving, acquiring, and purchasing said wildlife in interstate

8

commerce, knowing said wildlife was possessed, transported, and sold in violation of, and in a manner unlawful under, the laws and regulations of the United States, that is, in violation of, the ESA, Title 16, United States Code, Sections 1538(a)(1)(A), (E), (F), and (G) and CITES, 1538(c)(1), in violation of Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1)(B).

<u>Overt Acts</u>

12. In furtherance of the unlawful conspiracy and to effect the objectives thereof, within the District of Hawaii and elsewhere, the Defendants D.M. "DUSTY" GRUVER and JACKSON MULDOON, and others, in furtherance of the conspiracy charged here, did send or cause to be sent the following communications and did the following acts:

a) On or about October 7, 1998, Defendant GRUVER sold two hornbill ear weights to R.W. for $400.00 and mailed the items USPS certified mail to Maryland from Hawaii.

b) On or about October 18, 1998, Defendant GRUVER purchased two Orangutan skulls and two hornbill items for $500.00 from J.T. who was located in the country of Malaysia.

c) On or about October 24 1998, Defendant GRUVER sold two hornbill ear weights to R.W. for $600.00 and mailed the items U.S. Postal Service (USPS) certified mail to Maryland from Hawaii.

d) On or about October 29, 1998, Defendant GRUVER

sold one hornbill casque for $1,000.00, and the item was shipped to Maryland from Hawaii.

    e) On or about December 28, 1998, Defendant GRUVER was sent a package from Malaysia containing two hornbill skulls, two hornbill casques, and two tiger teeth. The items were seized by U.S. Customs.

    f) On or about April 6, 1999, Defendant GRUVER sold two orangutan skulls, one sun bear skull, and other items for $3,300.00 and mailed the items USPS certified mail to Montana from Hawaii.

    g) On or about April 29, 1999, Defendant GRUVER sent an email to Defendant MULDOON that stated the following: "Jack - let me know when you get this letter. There are boxes of stuff coming to me, via you, from Borneo. Let me know when they come and you can send them right on over to me. You will have to cover them with brown paper so they will appear domestic. And if the fish and wildlife guys come by for a chat, just tell them to get the [f...] off your property and don't come back unless they have a warrant. Then, jam to the post office and mail the box, pronto, you know? Ok, glad you can help me with this. I know nothing!!!!! Just practice that over and over. Love dusty."

    h) On or About May 5, 1999, Defendant GRUVER

purchased one orangutan skull from J.T. who was located in Malaysia.

  i)  On or about June 20, 1999, Defendant GRUVER sent an email to Defendant MULDOON that stated the following: "the reason that I need that liquid smoke is that I engage in let's say, ahhhhhhh, certain restorative techniques on numbers of tribal objects that I bring into the country.  This is not supposed to be done, but if an item is OK, but does not have much of a "patina" that everyone looks for and values, then I work on it until it does have a killer patina.  Trouble is, the "secret materials and techniques" that I use often leave a, ummmmm, 'modern' sort of smell, you see.  And, often as not, that woodsmoke "TRIBAL"-"REALLY AND TRULY GENUINE PRIMITIVE" smell will make the sale, after the correct "look" has already captivated the collector. ...and it is my opinion that LIQUID SMOKE (tm) will 'bring it all back' if you catch my drift...."

  j)  On or About July 13, 1999, J.T. sent five carved hornbill earrings to Defendant GRUVER.

  k)  On or about July 15, 1999, J.T. sent two carved orangutan skulls to Defendant MULDOON in Oregon.

  l)  On or about September 4, 1999, Defendant GRUVER sold a Sun bear skull for $227.50 and mailed it by USPS certified mail to Ohio from Hawaii.

  m)  On or about September 17, 1999, Defendant GRUVER

was sent a package from Australia containing one hornbill skull. This package was intercepted by U.S. Customs and seized.

n)  On or about September 21, 1999, Defendant GRUVER was sent a package from the Philippines containing a non-human primate skull necklace. This package was intercepted by the U.S. Customs Service and seized.

o)  On or about October 5, 1999, Defendant GRUVER sent an email to J.T. stating the following: "I just sustained some very heavy loses in U.S. Customs. I still want to take the chance on the hornbill but only if you can do the following - stain everything with the purple juice and do not buff or polish. I know it will look enough like wood carvings to pass almost any inspection. This will satisfy me enough to take the risk....".

p)  On or about October 10, 1999, Defendant GRUVER sent an email to J.T. that stated the following: "...I hope that you at least tried to disguise the objects in question in this shipment - that is my great hope at the moment, that all the items look like wood. I have deleted all of my extensive correspondence files with you, in case my hard drive is confiscated by the government should this investigation get any worse....".

q)  On or about October 28, 1999, J.T. sent two sets of hornbill earrings to Defendant MULDOON in Oregon.

r)   On or about October 31, 1999, Defendant GRUVER sold two orangutan skulls and one human cranial bowl for $2,222.50. The items were mailed by USPS certified mail to Montana from Hawaii.

s)   On or about October 31, 1999, Defendant GRUVER sent an email to J.T. that stated the following: "Send to Jack, in separate boxes. I take the risk. And the closer to Xmas, the better, as there will be much more mail coming thru and less chance to check."

t)   On or about November 23, 1999, Defendant GRUVER sold two hornbill ivory ear weights for $500.00 and mailed them by USPS insured mail to Belgium from Hawaii.

u)   On or about November 26, 1999, J.T. sent hornbill ear weights to Defendant MULDOON in Oregon.

v)   On or about November 26, 1999, Defendant sold one hornbill ear weight for $300.00 and mailed it by USPS insured mail to Switzerland from Hawaii.

w)   On or about December 9, 1999, Defendant GRUVER sent an email to Defendant MULDOON that stated the following: "....the next to the last box came today. Thanks a heap. It is 'funny' how they are just slitting the wrapper and looking at the outside of the box without ever breaking the any seal of the box itself. I mean, every box has questionable things in it, and every one is 'opened' for inspection, but nothing is really

inspected! So far anyway. The combination of Malaysian origin and the nursery as a destination must be clicking something....".

x) On or about December 12, 1999, Defendant GRUVER sent an email to Defendant MULDOON that stated the following: "...The 1st box arrived yesterday. Thanks it was an extremely important box with a trophy skull and dart container.... I will send some money to pay for the postage that you have been covering regarding these boxes from MY. One more is on its way, as of two or three days ago....".

y) On or about December 18, 1999, Defendant GRUVER sold a hornbill ivory ear weight to a Special Agent via the online auction E-Bay for $528.00 and mailed it by USPS certified mail to Illinois.

z) On or about February 15, 2000, Defendant sold another hornbill ivory ear weight for $350.00 to a Special Agent and mailed it USPS certified mail to Illinois.

aa) On or about March 19, 2000, Defendant GRUVER sold one hornbill ivory ear weight to a Special Agent and mailed it USPS certified mail to Illinois.

bb) On or about March 21, 2000, Defendant GRUVER sold one hornbill ear weight to R.W. for $350.00. The item was mailed USPS certified mail to Florida from Hawaii.

cc) On or about October 9, 2001, Defendant GRUVER sent an email to Special Agent Grace that stated in part the

14

following: "I don't know if I mentioned, but I just finished up a three year hassle with the US Fish & Wildlife Service regarding the illegal importation of hornbill ivory on my part. It looked like I was facing prison for awhile, but they settled for a fine that virtually crippled me. They are not f\*\*cking around with endangered species any more - I was told that trafficking in endangered species products is considered only slightly less important than gun and drugs smuggling. They are cracking down heavily, believe me. This, at the moment, does not include the mere possession of such items as objects in a collection. They are really looking for dealers, ?aHEM! However, you should be aware that even possessing parts of endangered species is clearly and blatantly against the CITES laws - the international statutes as written and attested to by the signatory nations. This is no longer a joke or a cheap gamble - it is high stakes stuff! Let me know when you get back and we will continue from there."

  dd) On or about October 23, 2001, Defendant GRUVER sold two hornbill earrings and a last rite bowl to Special Agent Grace for $900.00. The items were shipped to Glen Ellyn, Illinois, by the USPS certified mail.

  ee) On or about February 21, 2002, Defendant GRUVER possessed items made from the following wildlife species, including: Leopard, Clouded leopard, Asiatic black bear.

ff) On or about July 14, 2003, Defendant GRUVER imported five elephant ivory carvings from China without the required CITES documentation.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 9

The Grand Jury further charges:

13. Paragraphs 1-9 are repeated and re-alleged as though set forth in full here.

14. On or about the dates listed below, within the District of Hawaii and elsewhere, the Defendants D.M. "DUSTY" GRUVER and JACKSON MULDOON did knowingly import and bring into the United States merchandise, to wit, wildlife, including the following: Orangutan, Helmeted hornbill (hornbill), leopard, Asiatic black bear, and Sun bear contrary to law, and did knowingly sell such merchandise after importation, knowing the wildlife to have been imported and brought into the United States contrary to law, that is, contrary to the Endangered Species Act, Title 16 United States Code, Sections 1538(a)(1)(A), and CITES, 1538(c)(1), and Title 50, Code of Federal Regulations, Sections 14.52 and 14.61:

| COUNT | DATE |
|---|---|
| 2 | October 29, 1998 |
| 3 | April 6, 1999 |
| 4 | September 4, 1999 |
| 5 | October 31, 1999 |

```
6                November 26, 1999
7                December 18, 1999
8                February 15, 2000
9                March 19, 2000
```

All in violation of Title 18, United States Code, Sections 545 and 2.

## COUNTS 10 - 11

The Grand Jury further charges:

15. Paragraphs 1-9 are repeated and re-alleged as though set forth in full here.

16. On or about the dates listed below, within the District of Hawaii and elsewhere, the Defendants D.M. "DUSTY" GRUVER and JACKSON MULDOON did knowingly engage in conduct involving the sale and purchase of wildlife, that is, Helmeted hornbill ear weights, with a market value in excess of $350, by transporting, selling, receiving, acquiring, and purchasing said wildlife in interstate commerce, knowing said wildlife was possessed, transported, and sold in violation of, and in a manner unlawful under, the laws and regulations of the United States, that is, the Endangered Species Act, Title 16, United States Code, Sections 1538(a)(1)(A), (E), (F), and (G) and CITES, 1538(c)(1):

```
COUNT            DATE

10               October 24, 1998
11               June 20, 1999
```

All in violation of Title 16, United States Code,

Sections 3372(a)(1) and 3373(d)(1)(B), and Title 18, United States Code, Section 2.

DATED: December 17, 2003, at Honolulu, Hawaii.

A TRUE BILL

/s/

FOREPERSON, GRAND JURY

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

J. MICHAEL SEABRIGHT
Assistant U.S. Attorney

LESLIE E. OSBORNE, JR.
Assistant U.S. Attorney

United States v. D.M. "Dusty" Gruver,
aka Dustin Ayer Muldoon, and Jackson Muldoon;
Cr. No. 03-00517 SOM
"Superseding Indictment"